**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff<br><br>    v.<br><br>UNITED TECHNOLOGIES CORPORATION<br><br>    and<br><br>GOODRICH CORPORATION<br><br>    Defendants | CASE NO.:  1:12-CV-01230-KBJ |

**MOTION AND MEMORANDUM OF THE**
**UNITED STATES IN SUPPORT OF ENTRY OF FINAL JUDGMENT**

Pursuant to Section 2(b) of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) ("APPA" or "Tunney Act"), Plaintiff, the United States of America ("United States"), moves for entry of the proposed Final Judgment filed in this civil antitrust proceeding.  The proposed Final Judgment may be entered at this time without further hearing if the Court determines that entry is in the public interest.  The Competitive Impact Statement ("CIS") filed in this matter on July 26, 2012 explains why entry of the proposed Final Judgment is in the public interest.  The United States is also filing a Certificate of Compliance, attached hereto, which sets forth the steps taken by the parties to comply with all applicable provisions of the APPA and certifying that the statutory waiting period has expired.

## I. BACKGROUND

On July 26, 2012, the United States filed a civil antitrust Complaint alleging that the proposed acquisition by United Technologies Corporation ("UTC") of Goodrich Corporation ("Goodrich"), for approximately $18.4 billion likely would lessen competition substantially in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, in the worldwide markets for the development, manufacture, and sale of large main engine generators, aircraft turbine engines, and engine control systems for large aircraft turbine engines. This loss of competition likely would result in increased prices, less favorable contractual terms, and decreased innovation in the markets for these products.

At the same time the Complaint was filed, the United States also filed a Hold Separate Stipulation and Order ("Hold Separate Order") and proposed Final Judgment, which are designed to eliminate the anticompetitive effects of the acquisition, and the CIS. The Court entered the Hold Separate Order on July 26, 2012. Under the proposed Final Judgment, defendants are required to divest certain tangible and intangible assets associated with (a) the development, manufacture, and sale of large main engine generators, and (b) the development, manufacture, and sale of engine control products for small engines. The Final Judgment also requires defendants to divest shares in two joint ventures, Aerolec and Aero Engine Controls. The CIS explains the basis for the Complaint and the reasons that entry of the proposed Final Judgment would be in the public interest.

The Hold Separate Order provides that the proposed Final Judgment may be entered by the Court after the completion of the procedures required by the APPA. Entry of the proposed Final Judgment would terminate this action, except that the Court would retain jurisdiction to

construe, modify, or enforce the provisions of the Final Judgment and to punish violations thereof.

## II. COMPLIANCE WITH THE APPA

The APPA requires a sixty-day period for the submission of public comments on a proposed Final Judgment. *See* 15 U.S.C. § 16(b). In compliance with the APPA, the United States filed the CIS on July 26, 2012; published the proposed Final Judgment and the CIS in the Federal Register on August 2, 2012 (s*ee United States v. United Technologies Corporation, et al.,* 77 Fed. Reg. 46186); and ensured that summaries of the terms of the proposed Final Judgment and the CIS, together with directions for the submission of written comments relating to the proposed Final Judgment, were published in *The Washington Post* for seven days beginning on July 31, 2012 and ending August 6, 2012. The sixty-day public comment period terminated on October 5, 2012. The Division received only two comments, the response to which was filed with the Court on February 12, 2013, and published in the *Federal Register* on April 15, 2013 (s*ee United States v. United Technologies Corporation, et al.,* 78 Fed. Reg. 22302). Attached to this Motion and Memorandum is a Certificate of Compliance, which states that all the requirements of the APPA have been satisfied. It is now appropriate for the Court to make the public interest determination required by 15 U.S.C. § 16(e) and to enter the proposed Final Judgment.

## III. STANDARD OF JUDICIAL REVIEW

The APPA requires that proposed consent judgments in antitrust cases brought by the United States be subject to a sixty-day comment period, after which the court shall determine

whether entry of the proposed Final Judgment "is in the public interest." 15 U.S.C. § 16(e)(1). In making that determination in accordance with the statute, the court is required to consider:

> (A)  the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and
>
> (B)  the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1)(A)-(B). In considering these statutory factors, the court's inquiry is necessarily a limited one as the government is entitled to "broad discretion to settle with the defendant within the reaches of the public interest." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995); *see generally United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1 (D.D.C. 2007) (assessing public interest standard under the Tunney Act); *United States v. InBev N.V./S.A.*, 2009-2 Trade Cas. (CCH) ¶76,736, 2009 U.S. Dist. LEXIS 84787, No. 08-1965 (JR), at *3 (D.D.C. Aug. 11, 2009) (noting that the court's review of a consent judgment is limited and only inquires "into whether the government's determination that the proposed remedies will cure the antitrust violations alleged in the complaint was reasonable, and whether the mechanisms to enforce the final judgment are clear and manageable").

As the United States Court of Appeals for the District of Columbia has held, under the APPA, a court considers, among other things, the relationship between the remedy secured and the specific allegations set forth in the government's complaint, whether the decree is sufficiently

4

clear, whether enforcement mechanisms are sufficient, and whether the decree may positively harm third parties.  *See Microsoft*, 56 F.3d at 1458-62.  With respect to the adequacy of the relief secured by the decree, a court may not "engage in an unrestricted evaluation of what relief would best serve the public."  *United States v. BNS, Inc.*, 858 F.2d 456, 462 (9th Cir. 1988) (citing *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981)); *see also Microsoft*, 56 F.3d at 1460-62; *United States v. Alcoa, Inc.*, 152 F. Supp. 2d 37, 40 (D.D.C. 2001); *InBev*, 2009 U.S. Dist. LEXIS 84787, at *3.  Courts have held that:

> [t]he balancing of competing social and political interests affected by a proposed antitrust consent decree must be left, in the first instance, to the discretion of the Attorney General.  The court's role in protecting the public interest is one of insuring that the government has not breached its duty to the public in consenting to the decree.  The court is required to determine not whether a particular decree is the one that will best serve society, but whether the settlement is "*within the reaches of the public interest*."  More elaborate requirements might undermine the effectiveness of antitrust enforcement by consent decree.

*Bechtel*, 648 F.2d at 666 (emphasis added) (citations omitted).[1]  In determining whether a proposed settlement is in the public interest, the court "must accord deference to the government's predictions about the efficacy of its remedies, and may not require that the remedies perfectly match the alleged violations."  *SBC Commc'ns*, 489 F. Supp. 2d at 17; *see also Microsoft*, 56 F.3d at 1461 (noting the need for courts to be "deferential to the government's predictions as to the effect of the proposed remedies"); *United States v. Archer-Daniels-Midland*

---

[1]  *Cf. BNS*, 858 F.2d at 464 (holding that the court's "ultimate authority under the [APPA] is limited to approving or disapproving the consent decree"); *United States v. Gillette Co.*, 406 F. Supp. 713, 716 (D. Mass. 1975) (noting that, in this way, the court is constrained to "look at the overall picture not hypercritically, nor with a microscope, but with an artist's reducing glass").  *See generally Microsoft*, 56 F.3d at 1461 (discussing whether "the remedies [obtained in the decree are] so inconsonant with the allegations charged as to fall outside of the 'reaches of the public interest'").

*Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003) (noting that the court should grant due respect to the United States's prediction as to the effect of proposed remedies, its perception of the market structure, and its views of the nature of the case); *United States v. Republic Servs., Inc.*, 2010-2 Trade Cas. (CCH) ¶ 77,097, 2010 U.S. Dist. LEXIS 70895, No. 08-2076 (RWR), at *10 (D.D.C. July 15, 2010) (finding that "[i]n light of the deferential review to which the government's proposed remedy is accorded, [amicus curiae's] argument that an alternative remedy may be comparably superior, even if true, is not a sufficient basis for finding that the proposed final judgment is not in the public interest").

Courts have greater flexibility in approving proposed consent decrees than in crafting their own decrees following a finding of liability in a litigated matter. "[A] proposed decree must be approved even if it falls short of the remedy the court would impose on its own, as long as it falls within the range of acceptability or is 'within the reaches of public interest.'" *United States v. Am. Tel. & Tel. Co.*, 552 F. Supp. 131, 151 (D.D.C. 1982) (citations omitted) (quoting *United States v. Gillette Co.*, 406 F. Supp. 713, 716 (D. Mass. 1975)), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001 (1983); *see also United States v. Alcan Aluminum Ltd.*, 605 F. Supp. 619, 622 (W.D. Ky. 1985) (approving the consent decree even though the court would have imposed a greater remedy). Therefore, the United States "need only provide a factual basis for concluding that the settlements are reasonably adequate remedies for the alleged harms." *SBC Commc'ns*, 489 F. Supp. 2d at 17; *Republic Serv.*, 2010 U.S. Dist. LEXIS 70895, at *2-3 (entering final judgment "[b]ecause there is an adequate factual foundation upon which to conclude that the government's proposed divestitures will remedy the antitrust violations alleged in the complaint").

6

Moreover, in its 2004 amendments to the Tunney Act,[2] Congress made clear its intent to preserve the practical benefits of utilizing consent decrees in antitrust enforcement, stating: "[n]othing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene." 15 U.S.C. § 16(e)(2). The language wrote into the statute what Congress intended when it enacted the Tunney Act in 1974, as Senator Tunney explained: "[t]he court is nowhere compelled to go to trial or to engage in extended proceedings which might have the effect of vitiating the benefits of prompt and less costly settlement through the consent decree process." 119 Cong. Rec. 24,598 (1973) (statement of Senator Tunney). Rather, the procedure for the public interest determination is left to the discretion of the court, with the recognition that the court's "scope of review remains sharply proscribed by precedent and the nature of Tunney Act proceedings." *SBC Commc'ns*, 489 F. Supp. 2d at 11.[3]

The United States alleged in its Complaint that the acquisition likely would lessen competition substantially in the worldwide markets for the development, manufacture, and sale

---

[2]   The 2004 amendments substituted the word "shall" for "may" when directing the courts to consider the enumerated factors and amended the list of factors to focus on competitive considerations and address potentially ambiguous judgment terms. *Compare* 15 U.S.C. § 16(e) (2004), *with* 15 U.S.C. § 16(e)(1) (2006); *see also SBC Commc'ns*, 489 F. Supp. 2d at 11 (concluding that the 2004 amendments "effected minimal changes" to Tunney Act review).

[3]   *See United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C. 2000) (noting that the "Tunney Act expressly allows the court to make its public interest determination on the basis of the competitive impact statement and response to comments alone"); *United States v. Mid-Am. Dairymen, Inc.*, 1977-1 Trade Cas. (CCH) ¶ 61,508, at 71,980 (W.D. Mo. 1977) ("Absent a showing of corrupt failure of the government to discharge its duty, the Court, in making its public interest finding, should . . . carefully consider the explanations of the government in the competitive impact statement and its responses to comments in order to determine whether those explanations are reasonable under the circumstances."); S. Rep. No. 93-298, 93d Cong., 1st Sess., at 6 (1973) ("Where the public interest can be meaningfully evaluated simply on the basis of briefs and oral arguments, that is the approach that should be utilized.").

of large main engine generators, aircraft turbine engines, and engine control systems for large aircraft turbine engines.  The remedy in the proposed Final Judgment resolves the alleged competitive effects by requiring defendants to divest certain tangible and intangible assets associated with (a) the development, manufacture, and sale of large main engine generators, and (b) the development, manufacture, and sale of engine control products for small engines, as well as shares in the Aerolec and Aero Engine Controls joint ventures.  UTC has divested these assets to viable purchasers approved by the United States.

The public, including affected competitors and customers, has had the opportunity to comment on the proposed Final Judgment as required by law.  Two comments have been submitted, and the United States has responded to them.  There has been no showing that the proposed settlement constitutes an abuse of the United States's discretion or that it is not within the zone of settlements consistent with the public interest.

## IV.    CONCLUSION

For the reasons set forth in this Motion and Memorandum and in the CIS, the Court should find that the proposed Final Judgment is in the public interest and should enter the Final

Judgment without further hearings. The United States respectfully requests that the Final Judgment, attached hereto, be entered as soon as possible.

Dated: April 18, 2013

Respectfully submitted,

_____
Kevin C. Quin (D.C. Bar # 415268)
United States Department of Justice
Antitrust Division, Litigation II Section
450 Fifth Street, NW, Suite 8700
Washington, D.C. 20530
Tel.: (202) 307-0922
Fax: (202) 514-9033
Email: kevin.quin@usdoj.gov

## CERTIFICATE OF SERVICE

I, Kevin C. Quin, hereby certify that on April 18, 2013 I caused a copy of the Foregoing **Motion and Memorandum of the United States in Support of Entry of Final Judgment** to be filed in this matter with the Clerk of Court and to be served on the following counsel of record for Defendants United Technologies Corporation and Goodrich Corporation.

**Counsel for United Technologies Corporation:**
Michael H. Byowitz
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019

Wm. Randolph Smith
Robert A. Lipstein
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

**Counsel for Goodrich Corporation**
Tom D. Smith, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

Kevin C. Quin (D.C. Bar #415268)
United States Department of Justice
Antitrust Division, Litigation II Section
450 Fifth Street, N.W., Suite 8700
Washington, D.C. 20530
kevin.quin@usdoj.gov

10